MARTORELL ET AL., PLAINTIFFS AND APPELLANTS, v. J. OCHOA & BROTHER ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of San Juan, Section 1, in an Action to Annul Titles and of Ejectment.

No. 1499.—Decided July 28, 1917.

SYLLABI OF OPINION DELIVERED BY MR. CHIEF JUSTICE HERNÁNDEZ IN WHICH MR. JUSTICE ALDREY CONCURS.

EJECTMENT—GOOD FAITH—POSSESSION.—A possessor in good faith is one who believes that he acquired the thing from a person who was the owner thereof and could convey his title, or one who is ignorant of any defects invalidating his title or manner of acquisition. Good faith is compatible with a title invalidated by a defect, provided the possessor is ignorant thereof or believes that it does not exist.

ID.—COLOR OF TITLE—PRESCRIPTION—POSSESSION.—A color of title is not necessarily one which actually conveys the ownership or real right, but one which may be sufficient to convey it although invalidated by a defect. Therefore a title sufficient to convey the ownership, even if it does not actually pass it in law because invalidated by a defect, may serve to convey the ownership by ordinary prescription when accompanied by the requirements of good faith and possession for the time prescribed by law, such possession being besides in the capacity of owner and public, peaceful and uninterrupted, as provided by section 1842 of the Revised Civil Code.

ID.—ID.—POSSESSION—GOOD FAITH.—Under section 366 of the Civil Code, a

possessor need not have a perfect title in order to hold in good faith. A title adequate in its terms and conditions to transfer the ownership is sufficient if its defects are not known to the possessor. These defects must be such as to invalidate the title.

ID.—ID.—PRESCRIPTION—TITLE.—Applying to this case the foregoing doctrine, it was held that the defendant firm acquired by ordinary prescription the properties which the plaintiffs seek to recover because the deed of March 18, 1904, by which the mother, in the exercise of the *patria potestas* over her minor children, the plaintiffs, and with the authorization given on April 28, 1902, by the District Court of San Juan, which was not the district of her residence, sold the said properties to the defendant firm, is a good, true and valid title for the purposes of prescription—good, because it is a deed of sale sufficient to convey the ownership; true, because it has not been attacked as false; valid, because it is perfect in its external requirements and even in the internal conditions which affect its life and existence, according to section 1226 of the Civil Code, for there were subject-matter of the contract, consent and consideration.

ID.—ID.—AUTHORIZATION OF COURT—PRESCRIPTION.—The failure of a court of competent jurisdiction to authorize the sale of property belonging to minors affects the form of the consent, but not its essence. It does not make it non-existent but void, and hence the nullity of the title which, being void, gives rise to a suit in ejectment, but is sufficient for the purposes of prescription.

ID.—JURISDICTION—AUTHORIZATION OF COURT—PROPERTY OF MINORS.—In accordance with the statutes in force in 1902, the District Court of San Juan had jurisdiction *in radice* of matters of authorization for the alienation or incumbrance of property of minors, but was without jurisdiction to grant such authorization if the property were located in another district. Therefore the nullity in the present case does not arise from the lack of jurisdiction, but from the lack of competency of the court which exercised it; and this is different notwithstanding the fact that the terms are frequently used synonymously.

The facts are stated in the opinion.

*Messrs. José* and *Manuel Tous Soto* for the appellants.

*Messrs. Bosch & Soto* and *Isidoro Soto Nussa* for the appellees.

Opinion delivered by MR. CHIEF JUSTICE HERNÁNDEZ, in which Mr. Justice Aldrey concurs.

This is an appeal by the plaintiffs from a judgment rendered in the above-entitled cause by the District Court of San Juan, Section 1, on December 22, 1915, dismissing the complaint without special imposition of costs.

The said amended complaint, the original being dated June 5, 1914, prays for judgment setting aside the convey-

ance in payment of a debt of certain properties described in the complaint under Nos. 1, 2, 3, 4, 5, 6 and 7, in so far as it included the joint interests of the plaintiffs in said properties, and adjudging that each of the plaintiffs owns in each of the said properties a joint interest of two-eighteenths in fee simple, and a further joint interest of one-eighth in a joint interest of two-eighteenths in naked ownership, ordering that the defendant firm recognize the said joint interests and restore them to the plaintiffs together with the rents and profits received and receivable, of which they should render an itemized and verified account within a fixed time, with the costs, disbursements and attorney fees imposed upon the defendants.

The lower court made the following findings of fact:

(*a*) Each one of the plaintiffs owns in each of the properties described in the complaint a joint interest of one-ninth of one-half, or two-eighteenths of the whole in fee simple, and another joint interest of one-eighth of two-eighteenths in naked ownership.

(*b*) By a deed of March 18, 1904, Rosa Torrens, as representative of the then minor plaintiffs, sold to J. Ochoa & Brother the joint interests in the said properties which, as the heirs of their father, Pedro Martorell, the said minors owned in fee simple.

(*c*) Rosa Torrens made the said sale with the authorization of the District Court of San Juan given in its order of April 28, 1902, at which time as well as at the time of the execution of the deed she and her minor children under her *patria potestas* resided and had their domicile in the municipality of Ciales.

(*d*) The defendant firm is now in the possession of the properties described in the complaint and has been in such possession since the deed of sale was executed, receiving the rents and profits of the same.

(*e*) The firm of J. Ochoa & Brother had correspondence with Rosa Torrens and with the Succession of Pedro Marto-

rell, addressing the letters to the town of Ciales, their residence, and knew that Ciales was the fixed residence of Rosa Torrens and of her children when the court granted the authorization.

The defendants alleged as special defense that the action was barred by limitation according to section 1858 of the Revised Civil Code, and by its judgment of December 22, 1915, the court dismissed the complaint on that ground.

As ground for the appeal the appellants maintain that the lower court erred in holding that defendants J. Ochoa & Brother acquired the properties forming the subject-matter óf this action of ejectment by ordinary acquisitive prescription by possession for ten years in good faith and with color of title.

The sections of the Civil Code which govern the question involved in the present case are 1841, 1851, 1853, 1854, 1855, and 1858, which read as follows:

"Sec. 1841.—For ordinary prescription of ownership and other property rights, it is necessary to possess things in good faith and under a proper title, during the time specified by law."

"Sec. 1851.—Good faith of the possessor consists in his belief that the person from whom he received the thing was the owner of the same, and could convey his title."

"Sec. 1853.—By a proper title is understood that which legally suffices to transfer the ownership or property right, the prescription of which is in question.

"Sec. 1854.—The title for prescription must be true and valid.

"Sec. 1855.—A proper title must be proven; it never can be presumed."

"Sec. 1858.—Ownership and other property rights in real property shall prescribe by possession for ten years as to persons present, and for twenty years with regard to those absent, with good faith and with a proper title."

As is seen, section 1858 of the Civil Code requires that there must be good faith, color of title and possession for ten years as to persons present, and for twenty years as to

persons absent, in order to acquire by prescription owner-
ship and other property rights in real property.

Section 1851 defines good faith as consisting in the belief
that the person from whom the possessor received the thing
was the owner of the same and could convey his title. Such
belief is sufficient to establish good faith, and it is not neces-
sary that the grantor should be the real and absolute owner
thereof and could pass title of ownership. This definition
of good faith is in harmony with that of sections 436 and
437, which are made applicable to prescription by the ex-
press provision of section 1852; and section 436 provides
that a bona fide possessor is deemed to be the person who
is not aware that there exists in his title, or in the manner
of acquiring it, any flaw invalidating the same, and that a
possessor in bad faith is deemed to be any person possessing
in any contrary case. According to section 437, good faith
is always presumed and any person averring bad faith on
the part of a possessor is bound to prove the same. There-
fore a person who believes that he acquired the property
from one who was the owner of it and capable of transferring
its ownership, or a person who is not aware that there exists
in his title, or in the manner of acquiring it, any flaw invali-
dating the same, is a bona fide possessor. Consequently,
good faith is compatible with a title invalidated by a defect,
provided the possessor is not aware of the existence of such
defect or believes that it does not exist.

As regards color of title, section 1853 expressly provides
that it is understood to be that which legally suffices to trans-
fer the ownership or property right, the prescription of
which is in question. In order that the title may be color-
able it is not necessary that it actually transfers the owner-
ship or property right, but that it is sufficient to transfer
it *although it may contain a defect which invalidates it.* And
this is necessarily so, because if under the name of color of
title, which the law requires for prescription, is meant only
a title clothed with all the internal and external requisites

necessary for the real and actual transfer of ownership, prescription would be superfluous as a means of acquiring ownership.

"This is not only just but legal," as said in the case of *Teillard* v. *Teillard et al.,* 18 P. R. R. 546, "unless the provisions of the Civil Code that after the lapse of ten years as to persons present and of twenty as to absentees dominion of real property possessed in good faith and by just title is acquired by prescription, should be rendered ineffective.

"If possession transferred by virtue of a sale requires, even thus, thirty years to prescribe, such provisions of the Civil Code, as also the many decisions of this Supreme Court, the greater number of which are embodied in volumes 3, 5 and 6 of our reports and were rendered in dominion cases in accordance with the aforesaid provisions, would be useless."

And we then added, quoting from the judgment of the Supreme Court of Spain of October 25, 1881, that "if the void title cannot cease to be such, converting itself into a valid one, the laws based on reasons of public convenience have in some cases accorded to possession an irrevocable force, not on the strength of its original cause, but in view of the respect due to a status consecrated by the lapse of time."

That doctrine was ratified later in the cases of *Picard* v. *De León,* 22 P. R. R. 553; *Arroyo et al.* v. *Bruno et al.,* 23 P. R. R. 757, and *Maldonado* v. *Ramos et al.,* 24 P. R. R. 278. In disposing of an appeal in which it was alleged that articles 1950, 1952 and 1953 of the Spanish Civil Code (secs. 1851, 1853 and 1854 of the Rev. Civ. Code) had been violated by a ruling that a deed of sale of a concession by a widower who had acquired the same during wedlock was sufficient for acquisition by ordinary prescription, it being urged that said deed was null and insufficient to pass title by prescription, the Supreme Court of Spain, by its judgment of October 2, 1908, dismissed the appeal for the following reasons: "(1) Because the deed of July 16, 1891, is a good and perfect title on its face to transfer the ownership and contains

the requirements of sections 1952 and 1953 of the Civil Code, it not being legally practicable to confound a defect which may affect a title for the purposes of prescription, such as the lack of any requirement which, according to its character, may defeat the title in an action, with a defect resulting from the nature of the acts performed and the capacity of the parties; (2) because good faith being always presumed and consisting in the *belief* that the person from whom the property was received was the owner and could transfer its ownership, according to article 1950, this condition can not be denied ·the·defendant companies because of the mere detail that the Count of Locatelli had executed the deed in which he stated that he·was a widower, inasmuch as he appeared as the only grantee and as such has the character of owner, apart from the domestic inconveniences produced by the death of his wife six weeks before the· execution of the deed, which might have passed unnoticed by those who took part in the organization of the partnership, and because in considering what constitutes mere belief sufficient to establish good faith *it is not·necessary to apply the strict principle of law as in a case where it is sought to determine the validity of the act * * *.*'' 112 Civ. Jur. 39.

Later, in a judgment of November 30, 1910, the same court held that ''even supposing that a deed could not have transferred to the vendee the ownership of the property claimed because of the nullity of the title asserted by the vendor, if the said deed, besides containing in form the requirements of the law, constitutes by its nature a title conveying ownership, it is manifest that it fulfils the conditions of articles 1952 and 1953 of the Civil Code (secs. 1853 and 1854 of the Rev. Civ. Code), as held by this court in similar cases; because, if it were required that the said deed should convey to the purchaser in fact and in law the ownership of the property, there would be no need for him to resort to prescription, and this mode of acquisition, in so far as regards ordinary prescription, would be superfluous and would have

to be eliminated from the methods of acquiring title under our statutes as unnecessary and useless." 119 Civ. Jur. 486.

In view of the statutes cited and of the jurisprudence established by this court in harmony with that of the Supreme Court of Spain, we arrive at the conclusion that a title capable of transferring ownership, although it does not convey it in fact and in law because of a fatal defect, may serve for the acquisition of ownership by ordinary prescription, provided the requirements of good faith and possession for the time prescribed by law are shown and such possession has been held as owner, publicly, peacefully and uninterruptedly in accordance with article 1842 of the Revised Civil Code.

The foregoing conclusion is not affected by the provision of section 1854 that the title for prescription must be true and valid. The antonym of "true" in its grammatical and legal signification is "false." We cannot give to the word "valid" a meaning which would eliminate from our code the method of acquiring by ordinary prescription as would be the case if we should understand a valid title to be one clothed with all the internal and external requirements of the law. According to the judgments of the Supreme Court of Spain of October 2, 1907, and November 30, 1910, a valid title is one which contains the elements necessary to give life to the title and to show its existence independently of the nature of the acts performed and of the capacity of the parties.

Section 366 corroborates our theory. It reads as follows:

"He is *bona fide* possessor who possesses as owner by virtue of a title sufficient in its terms and conditions to transfer the ownership, and the defects of which he is ignorant of. *Bona fide* possession ceases from the moment the possessor becomes acquainted with the defects of the title, or through a suit instituted by the owner of the thing to recover the same."

So that according to the said section, in order to be a possessor in good faith it is not necessary to have a perfect title, but it is sufficient to have a title adequate in its terms

and conditions to transfer the ownership if its defects are not known to the possessor. These defects must be such as to invalidate the title; otherwise prescription would be superfluous, as we have already said.

Applying the foregoing doctrine to the case before the court, the conclusion is inevitable that the defendant firm acquired by ordinary prescription the joint interests which the plaintiffs seek to recover. The deed of March 18, 1904, by which Rosa Torrens, in the exercise of *patria potestas* over her minor children, the plaintiffs, sold the said joint interests to J. Ochoa & Brother with the authorization of the District Court of San Juan of April 28, 1902, is a good, true and valid title for the purposes of prescription,—good, because it is one of purchase and sale sufficient to convey the ownership; true, because it has not been attacked as false; valid, because it is perfect in its external requirements and even in the internal conditions which affect its life and existence, according to section 1228 of the Civil Code; for there was a coincidence in the contract of a subject-matter consisting of the joint interests described in the complaint, the consent of J. Ochoa & Brother through their managing partner, Severo Ochoa, and by the minors through their legal representative, or their mother, Rosa Torrens, by virtue of her *patria potestas* and a consideration contributed to by both parties; namely, the conveyance of the property and the payment of its price. The lack of authorization by a competent court affects the form but not the essence of the consent. It does not render it inexistent but void; hence the nullity of title, which, being void, gives rise to a suit in ejectment; but it is sufficient for the purposes of prescription. The possession by J. Ochoa & Brother has been in good faith, for this is always presumed and the evidence does not show that they knew that their title or manner of acquiring it was affected by a fatal defect.

Considering all the circumstances of the case, the fact that J. Ochoa & Brother knew that Rosa Torrens and her children

resided in Ciales, which is in the judicial district of Arecibo and not in that of San Juan, does not destroy the legal presumption that the said firm has been a bona fide possessor. And that the said possession was in the character of owner and public, peaceful and uninterrupted, as required by section 1842 of the Civil Code, and for more than ten years as to persons present, is not a matter for discussion in the present appeal.

The decision of the District Court of San Juan of April 28, 1902, authorizing Rosa Torrens to sell the joint interests of her minor children in the real property, reads as follows:

"Whereas Rosa Torrens y Risech has petitioned for authorization to sell the undivided interests which her minor children Teresa Antonio, Luis, Miguel and Gerardo Martorell y Torrens, who are subject to her *patria potestas,* have in the following rural properties (the properties described in the complaint); whereas the necessity and utility of the said sale as regards the minors aforesaid have been shown by the three witnesses of good repute whom the secretary certifies he knows, after citing the Government's attorney, who is of the opinion that the authorization asked for should be granted. Therefore in view of the provisions of article 164 of the Civil Code and articles 2010 *et seq.* and 2029 of the Code of Civil Procedure, Rosa Torrens y Risech, for and in behalf of her aforesaid minor children, is authorized to sell the interests which they have in the said properties. The justices of the court so decided and sign, to which I certify. Juan B. Ramos. Juan Morera Martínez. José R. F. Savage. Before me, Ramón Falcón."

Invested with the said authorization, the legal efficacy of which was not questioned by either Rosa Torrens or J. Ochoa & Brother, the former, representing the minors, by a deed of March 18, 1904, executed before Notary Herminio Díaz Navarro, sold the said joint interests to J. Ochoa & Brother.

The deed of sale was recorded in the Registry of Property of Arecibo.

In view of the foregoing facts, the learned attorney for the appellees pertinently propounded the following question:

"If the attorney who advised Rosa Torrens and prepared the petition believed that his action in presenting the same to the District Court of San Juan was correct and legal; if the district attorney expressed a favorable opinion; if the three judges who heard the said petition rendered a decision granting the same; if the notary public who drew up the deed of sale with the decision of the court before him made no objection; if the registrar upon recording the title of ownership found no defect invalidating the same, all of them being learned in the law and required by law to pass upon the validity or invalidity of an instrument, for what reason and by what right can it now be claimed that J. Ochoa & Brother are responsible for the defects or errors committed by a third person and completely beyond and independent of their will? If the jurisconsults failed to observe or note any defect in the authorization given to Rosa Torrens, how can it be expected that J. Ochoa & Brother, laymen as regards juridical technicalities, should do so? J. Ochoa & Brother were not called upon to solve a legal problem of such a difficult nature as to require a searching analysis of the legal principles involved in the said authorization, as has been shown by the subsequent decision of this court which evidences a careful, arduous and complex study of the subject."

It is true that a court without jurisdiction can authorize no one to alienate property belonging to minors. But we are of the opinion that taking into consideration the date— April 28, 1902—on which the District Court of San Juan authorized Rosa Torrens to dispose of the property, it cannot be held absolutely that said court had no jurisdiction to grant the authorization, notwithstanding the fact that not it but the District Court of Arecibo was the proper court to authorize the sale.

According to the laws of Spain, which govern the present case, *jurisdiction,* as defined by the distinguished commentator Manresa y Navarro in his Commentaries on the Spanish Code of Civil Procedure, is the authority with which the

judges are invested to administer justice, and *competency* is the authority which they have to take cognizance of certain matters, either on account of the very nature of the thing involved or by reason of the persons. The former is the genus and the latter the species. Jurisdiction always emanates directly and immediately from the law. No one can exercise it unless the law has given him that authority. Only the persons who have been given such authority according to law have jurisdiction and can administer justice; but the competency of a judge to take cognizance of a matter, although derived also from the law, sometimes originates directly, immediately and exclusively from the law and at other times from the will of the parties. The former case is the general rule and the latter the exception. *Garcés Nazario v. Franceschi,* 1 D. P. R. 282; *Bayron et al.* v. *Garcia et al.,* 17 P. R. R. 512.

Under the foregoing theory the Law of Civil Procedure which went into effect on January 1, 1886, and which was not modified as to the matter under consideration by General Order No. 118 of August 15, 1899, and was in force when the authorization was given, provides in article 53 that—

"In order that judges and courts may be considered as having jurisdiction it is necessary: 1. That the right to take cognizance of the action, or of the proceedings in which they take part, be vested by law in the authority they exercise. 2. That the right to take cognizance of the action or proceeding be vested in them in preference to other judges or courts of the same class."

And article 56 provides that any judge impliedly or expressly agreed upon by the litigants shall be competent to take cognizance of the suits arising from actions of all kinds, but that this submission can only be made to a judge exercising ordinary judisdiction and who is competent to take cognizance of questions similar to and of the same kind as the one submitted. Article 63, in prescribing certain rules for determining competency, provides under subdivision 23 that in authorizations for the sale of property of minors or

incapacitated persons, the competent judge shall be that of the place where the property may be situated, or that of the domicile of the persons to whom it belongs.

It was common doctrine sustained by judgments of the Supreme Court of Spain of July 22 and September 30, 1875, October 6, 1876, and June 2, 1877, and by decisions of the General Directorate of Registries of January 22, 1886, and May 9, 1889, that both in cases of contentions and voluntary jurisdiction submission could be made to the judge exercising ordinary jurisdiction and having jurisdiction of matters of the same kind and in the same degree. That doctrine was accepted by this court in the case of *Solá* v. *Registrar of Property*, 8 P. R. R. 205, but was rejected later in the cases of *Nazario* v. *Registrar of Property*, 16 P. R. R. 635, and *Esterás et al.* v. *Arroyo*, 16 P. R. R. 689.

However, as the legal question of whether the jurisprudence to which we refer would be applicable to the authorization to alienate and encumber property belonging to minors after the former Civil Code went into effect in this island on January 1, 1890, had not been .considered and decided by the Supreme Court of Spain or by the General Directorate of Registries, it having been raised, so far as we know, for the first time in the present action and in another similar action between the same parties, we decided it in the sense that since the Civil Code of 1890 went into effect only the judge. of the district in which the minors resided was competent to authorize the alienation or encumbrance of their real property, and that in that case competency could not be given by submission. *Martorell et al.* v. *J. Ochoa & Brother*, 23 P. R. R. 28, 41.

In considering in the said cases the question of the nullity of the authorization granted Rosa Torrens, this court did not prejudge the plea of prescription now under discussion, notwithstanding the fact that such nullity may have extended to the deed of March 18, 1904, and consequently effected the recovery sought if prescription had not intervened.

Under the statutes then in force the District Court of San Juan had jurisdiction *in radice* of such kinds of matters as authorization for the alienation or encumbrance of the property of minors, but was not competent to grant the authorization given in the present case because by express provision of law it came within the exclusive jurisdiction of the court of the district in which the property was located. If the authorization had been granted by this court or by one of its justices, or by a municipal court or justice of the peace court, or by any officer or private individual not authorized to administer justice, the authorization would then have been void for lack of jurisdiction and might have been correctly held to be non-existent. Its nullity does not arise from lack of jurisdiction but from the want of competency in the court which granted the authorization. Jurisdiction and competency have different meanings although they are frequently used synonymously.

The case of *Longpré* v. *Díaz,* 237 U. S. 512, is unlike the present in which authorization for the sale was granted by a district court and was presumed to be valid until its validity was submitted to the court by the complaint of June 5, 1914, at which time all the legal requirements for acquisition of ownership by ordinary prescription as to persons present had been complied with.

We will state that in reaching this conclusion we have been influenced especially by the laws, jurisprudence and legal principles in force when the District Court of San Juan rendered its decision of April 28, 1902, at which time neither the Code of Civil Procedure of 1904 nor the Law relating to Special Legal Proceedings of 1905 had gone into effect.

The judgment appealed from is

*Affirmed.*

Mr. Justice Hutchison concurred in the judgment.
Justices Wolf and del Toro dissented.

CONCURRING OPINION OF MR. JUSTICE HUTCHISON.

From January 1 to July 31, 1915, some three hundred and eighty matters were disposed of by this court. Among these was an appeal from the judgment of a district court, dismissing this suit after having sustained the demurrer to the complaint for want of facts sufficient to constitute a cause of action. That judgment was reversed on July 23, 1915. 23 P. R. R. 28.

The third assignment of error on that appeal specified "Failure to apply the judgment of this court in the case of *Esteras* v. *Arroyo,* 16 P. R. R. 689, and its antecedent of the Supreme Court of the United States, the case of *Garzot* v. *Rubio,* 209 U. S. 303."

This court was confronted with the alternative of repudiating the doctrine of *Esteras* v. *Arroyo* or of reversing the district court either upon the authority of that case or upon some other ground. The conclusion reached in *Esteras* v. *Arroyo* was supposed to be the necessary consequence of *Garzot* v. *Rubio,* and at a glance the pertinent portion of the opinion of the Supreme Court of the United States in that case, if read without analysis or reference to the context, would appear to support such an inference.

The result in the case then before this court seemed inevitable, and the grounds upon which the decision was to be based became largely a matter of choice within a somewhat restricted and unsatisfactory range of selection. Thus, the case did not receive due consideration on its merits. The circumstances, extenuating or otherwise, that contributed to this result need not be enumerated. An occasional error is unavoidable and, when discovered, should be corrected promptly. Two wrongs never make a right.

On the second appeal the judgment of the district court was affirmed by a divided court. An opinion filed by the Chief Justice represents the views of two out of the three members constituting a majority, and the grounds upon which the other

two members dissented likewise appear from the dissenting opinion filed by Mr. Justice Wolf. No reasons were assigned at the time for the action of the writer, who concurred in the judgment. A motion for a rehearing has been granted and the purpose of this memorandum is to give the parties an outline of the considerations upon which such deciding vote was based.

The case of *Esteras v. Arroyo,* without so much as assigning a reason beyond a bare reference to sections 19 and 23 of the Law of Special Legal Proceedings and to the case of *Garzot v. Rubio, supra,* absolutely overrules the doctrine of *Solá v. Registrar of Property,* 8 P. R. R. 205, which for more than five years stood unchallenged as the solemn judgment of this court.

The case last mentioned is deep-rooted in the fertile soil of Spanish jurisprudence, and the statutory provisions upon which the opinion therein is based are as firmly embedded in our present Code of Civil Procedure, Title V—"Of the Place of Trial of Civil Actions"—as they ever were in the Spanish code. The legislature is presumed to have known the law and the status thereof at the time it enacted sections 76 and 77 of the present code, and in taking them from the Spanish Code of Civil Procedure it adopted with them the established practice sanctioned by the interpretation of the former law of the Spanish courts.

That in this particular instance the Legislative Assembly understood the matter it had in hand is self-evident. For unless the Spanish practice under these sections is brought with them into the new code, they add nothing to the other sections of the same title copied from the Idaho code, and in so including them our lawmakers did a vain and useless thing. And we have no reason to assume that the grouping of these two sections with other appropriate provisions governing the place of trial was a mere fortuitous circumstance. On the contrary, and aside from any presumption of law, it was plainly the most natural, proper, and logical thing to

do. Translated as near as may be into terms of American law, the principle involved is not a matter of jurisdiction in its ordinary sense, but of modern municipal venue. *Bayron* v. *Garcia,* 17 P. R. R. 512; *Gómez* v. *Toro,* 23 P. R. R. 596; 40 Cyc. pp. 23–43.

However much confused by the use, unfortunate or otherwise, in the beginning of words which have come to have a fixed and definite meaning in each language, at variance to a certain extent with that of etymological counterparts in the other, and however great the resulting difficulty of mutual translation into the technical legal terminology of the two systems of jurisprudence, yet the fundamental difference between jurisdiction in its true sense and the proper place of trial as between local courts of co-ordinate jurisdiction, by whatever name it be known and designated, exists in both and ought to control in the final disposition of the instant case.

The two opinions in the same case can not be reconciled. What was said on the first appeal need not be repeated here. That opinion, at least in the Spanish version, speaks for itself. If the doctrine then announced is sound, section 164 of the Civil Code confers exclusive jurisdiction upon the district of the domicile, and there can be no question of venue, of procedure, of just title, of good faith, or of ordinary prescription. The decree of any other court is an absolute nullity and cannot give color of title. But that decision was radically wrong because it proceeded upon the tacit assumption that by reason of the Garzot case this court had no alternative other than to follow to a logical conclusion the doctrine already announced in *Esteras* v. *Arroyo.* The omission in the opinion of all reference to those cases merely indicates the reluctance of the court to follow the same when any other more plausible ground could be found.

The third assignment of error, however, shows the theory of the action and of the appeal.

The question of dates is not important.

The hypothesis of an implied repeal necessarily hinges upon the very doubtful proposition that section 164 of the Civil Code lays down an absolute and inflexible principle of substantive law, not only as to the primary matter of judicial authorization, but also as to the secondary consideration of what particular district court should grant such relief. The mere statement of the proposition does not establish the soundness thereof. Repeals by implication are not favored. The premise excludes the idea of a rule of procedure and, in so far as assumed without apparent justification, simply begs the question.

The ruling of the district judge sustaining the demurrer and the judgment below dismissing the action should have been affirmed on the first appeal. This not having been done, the error should have been freely confessed when the case came up a second time. There is no middle ground. The traditional "law of the case" can never justify a deliberate sacrifice of plain substantial justice.

The judgment of this court upon the first appeal was not a final judgment. *Great Western Tel. Co.* v. *Burnham,* 162 U. S. 339.

"In the absence of statute, the phrase 'law of the case,' as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided—not a limit to their power." *Messenger* v. *Anderson,* 225 U. S. 436, and cases cited.

If there be anything at all in the case of *Garzot* v. *Rubio* that can be construed to support the conclusion reached in *Esteras* v. *Arroyo,* it is the use of the word "exclusive" in connection not only with the immediate context but with what precedes and what follows the two paragraphs of the opinion in which the expression occurs and which read as follows:

"By the Porto Rican Code of Civil Procedure (article 62, paragraph 5), power to administer estates, both testamentary and intestate, is vested in the judge of the last place of residence of the de-

ceased. That the power thus conferred is exclusive is shown by the text of the same article and by the comprehensive grant of authority embraced in the provisions of the code which follow, relating. to the' settlement of both testamentary and intestate successions. That it embraces authority to entertain and dispose of all actions, whether real or personal, necessarily incidental to the accomplishment of the poweis granted over estates, is shown by the provisions of article 1001 of the same code. The similarity between the provisions of the Louisiana code as to the community and the analogy which obtains between the provisions of the Louisiana Code of Practice and the Code of Civil Procedure of Porto Rico, concerning the power of the judge or court charged with the administration of estates, whether testamentary or interstate, especially where questions concerning the liquidation of a community, which has existed between husband and wife, is concerned, make pertinent the observations of the Supreme Court of Louisiana in *Lawson et ux.* v. *Ripley,* 17 Louisiana, 238, 248, where it was said:

" 'The succession of the husband, is therefore so far connected with the community as to form together, at the time of his death, an entire mass called his estate, which is not only liable for the payment of the common debts, but also for the portion of the wife or her heirs to the residue, if they have not renounced. The widow or her representatives have consequently such an interest in the mass of the estate or succession of the husband, with regard to whom no distinction is made between his separate property and that of the community until the net proceeds or amount of the acquets and gains are ascertained, that their assistance at the inventory and their concurrence at all the proceedings relative thereto, which are to be carried on contradictorily with them, are generally required. All such proceedings take place before the court of probates who, according to law, has exclusive jurisdiction of all the matters concerning the estate, particularly in those cases where it is in a course of administration; and it does not occur to us that separate proceedings can properly be had in relation to the community, until after the settlement of the husband's estate and the payment of the common debts, and division of the residue of the acquets and gains is to be made between the heirs of the deceased and the surviving spouse; and even then the affairs of the husband's estate, administered under the control and supervision of the court of probates, are to be inquired into and sometimes fully investigated.' "

Going back to what precedes the portion of the opinion

just quoted, the Supreme court, after determining that the local Federal court was without authority to make the decree below, for want of necessary parties, and that for the same reason the case on appeal could not be decided on its merits, proceeds to consider whether "in view of the nature and the character of the relief sought by the bill" the case should be remanded for a new trial or with directions to dismiss the bill "because of an inherent want of jurisdiction to give the relief which the bill sought."

It was "patent on the face of the bill that it but invoked the authority of the court to exercise purely probate jurisdiction by administering and settling the estate of Ríos, the estate of his son, and that of the mother, and, as an incident thereof, to liquidate the community which had existed between Ríos and his wife. Indeed, such was exactly the substantive relief which the bill as finally amended prayed."

What was decided, as well as the pivot upon which the decision turned, is made unmistakably clear by the perfectly plain language that follows:

"As by the bill it is alleged that on the death of the father and brother probate proceedings concerning both estates had been commenced in the proper Porto Rican court, it results that not only did the bill seek to administer the estate through the court below, but it sought also to do so, although the estates were open in the local court and subject to the power and authority of such court. In establishing a civil government for Porto Rico, Congress, scrupulously regarding the local institutions and laws, by section 33 of the act of April 12, 1900, preserved the local courts, both original and appellate, and recognized their power and authority to deal generally with all matters of local concern. In creating by the thirty-fourth section of the same act the District Court of the United States for Porto Rico, the jurisdiction and power of that court, we think by the very terms of the act, were clearly fashioned upon and intended to be made, as far as applicable, like unto the jurisdiction exercised by the circuit and district courts of the United States between the several States of the Union. It is true that the jurisdiction of the district court, resulting from citizenship, has been made broader than that conferred upon the circuit and district courts of the United

States within the States. But this does not tend in any may to es-tablish that it was the purpose of Congress, in creating the District Court of the United States for Porto Rico, to endow that court with an authority not possessed by the courts of the United States (*Farrell* v. *O'Brien,* 199 U. S. 89), to exercise purely probate jurisdiction to administer and settle estates in disregard of the authority of the local court as created and defined by law.''

That is both the gist and the rationale of the decision.

The court then proceeds to discuss the scope and extent of the powers vested in the district courts of Porto Rico in probate matters, presumably to the exclusion of other tribunals, as appears from the two paragraphs first above quoted, in each of which the word ''exclusive'' is employed.

Again:

''Coming to consider the subject from the point of view of the averments as to the nullity of the agreement and the fraudulent simulation of the sales, it is clear that the relief sought in this regard was merely ancillary to the prayer for the liquidation and settlement of the estates. As we take judicial notice of the fact that the distinctions between law and equity in a technical sense do not obtain in the local law of Porto Rico, and as under that law a court charged with the administration of an estate is one of general as well as probate jurisdiction and has full power over all personal and real actions concerning the estate, it follows that the local court had in the nature of things power to determine, as an incident to its general and probate authority, whether the estate had been closed by the agreement, and hence to decide whether that agreement was void, and had also jurisdiction and power to determine whether the property which had been transferred to the mother by the agreement yet remained a part of the estate, and as an incident to so doing to decide the questions of fraud and simulation which were alleged in the bill. Of course, the general scope of the authority which the court then possessed endowed it with the power to liquidate and settle the community which existed between the husband and wife, as that liquidation was of necessity involved in the settlement of the estate. Speaking on this latter subject in *Lawson et ux.* v. *Ripley, supra,* the Supreme Court of Louisiana said (p. 249):

'' 'But it is contended that this would be giving to the court of probates the right of trying questions of title. Probate courts

have certainly no power to try titles to real estate, and to decide directly on the validity of such titles; but as this court has said in the case of *Gill* v. *Phillips et al.*, 6 Martin N. S. 298, "those courts possess all powers necessary to carry their jurisdiction into effect, and when in the exercise of that jurisdiction questions arise collaterally they must, of necessity, decide them, for if they could not no other court could." And, "any other construction would present a singular species of judicial power—the right to decree a partition, without the authority to inquire into the grounds on which it should be ordered, or the portions that each of the parties should take. The end would thus be conceded without the means." *Baillo* v. *Wilson*, 5 Martin. N. S. 217. We are satisfied that whenever a question of title to real property and slaves arises collaterally in a court of probates, and an examination of it becomes necessary in order to give the court the means of arriving at a correct conclusion on matters of which it has jurisdiction, it must take cognizance of such title at least for the purpose of ascertaining which property belongs to either of the spouses respectively or to the community.' "

The only possible bearing of all this upon the question then before the Supreme court is disclosed in the following paragraph:

"True it is that by article 1046 of the Porto Rican Code of Civil Procedure the parties interested in an estate which is unsettled and under the dominion of the proper court are given power to terminate the estate by a voluntary agreement between them, and that such may have been the effect of the agreement between the parties here in question if the same was valid. But as the bill charged and the relief which it asked was based upon the conception that the agreement was void, it follows that the relief which the bill sought could only have proceeded upon the hypothesis that the estate had not been closed, and was yet subject to be administered in the proper court. And that this was the theory of the bill is shown by the prayer that the court appoint a master to liquidate and settle the estates."

The sum and substance of the whole opinion, in so far as the question now under consideration is concerned, is that the Federal court has no probate jurisdiction; that as between that court and the Insular district courts the probate jurisdiction of the latter is exclusive; and that the bill in question in effect sought to reopen and to conclude in the

Federal court a judicial administration which, although os-
tensibly settled by an agreement alleged in the bill to be
void, yet which, if tested by the theory of the bill itself, had
never been fully administered nor permanently closed in the
Insular court.

The opinion, fairly construed, does not indicate that the
question of jurisdiction, as between the respective Insular
district courts, was in anywise involved or was seriously con-
sidered by the court.   It is equally clear that in *Lawson* v.
*Ripley* there was likewise no question as to conflict of juris-
diction between local probate courts.   If in the Garzot case
the supreme court had intended to determine the matter of
jurisdiction as between one Insular district court and an-
other, by a direct application in Porto Rico of the Louisiana
rule, cases in point as to the law in Louisiana are not wanting
and undoubtedly would have been cited.   Perhaps, assuming
that the point as a separate and distinct proposition was in
the mind of the court, it was taken for granted in the circum-
stances of the case then under consideration, and *arguendo,*
that the Louisiana doctrine as to the exclusive territorial
jurisdiction of the respective Louisiana probate courts was
equally well established in Porto Rico.

But assume, for the sake of argument, that the Supreme
court by a stroke of the pen in the Garzot case meant to
establish beyond question and for all time the proposition
that in no circumstances could any Insular district court other
than that of the last place of residence of the deceased pro-
ceed with a judicial administration.   Certainly in no other
instance has the opinion of this court construing any local
law been brushed aside and held for naught with so little cere-
mony.   At the time of that decision there was no local rule
of real property more firmly fixed, not only by the Insular
courts, but also by those of last resort in Spain, than that
arising out of the privilege in *ex parte* matters of selecting
the most convenient court of competent jurisdiction.   No one
in this island, lawyer or layman, doubted the existence of

such a right, which rested upon the uniform interpretation for many years of articles 56 and 57 of the former Code of Civil Procedure, in connection with the saving clause contained in the opening paragraph of article 63. To hold in the face of that express qualification of the general rule, that subdivision 5 of the article last mentioned confers upon the court of the last place of residence of the deceased a jurisdiction exclusive of all power to act in any other Insular district court to which the parties interested may have applied, would be to destroy hundreds, perhaps thousands, of recorded titles considered flawless by all parties concerned in giving them legal sanction when the stamp of judicial approval was sought, including attorneys, courts, and registrars of property, whose duty it was, each in turn and with independent judgment, to pass upon the same. That the Supreme Court of the United States, in a case in which the point was never raised, argued, submitted, or involved, by the mere *ipse dixit* of a single sentence, intended to bring about any such result would seem to be simply inconceivable. No argument should be required to show that it had no such purpose. To state the proposition is to refute it.

This is not the only case now on the calendar. These views do not profess to be the crystalline product of profound cogitation. They are submitted for what they are worth. They may be mistaken. If so, they ought to be, and will be, revised and corrected.

Possibly the judgment of the district court herein should be reversed and in lieu thereof another entered for plaintiff. Perhaps the conclusion reached on the first appeal is correct. The doctrine of *Esteras* v. *Arroyo* may be sound at bottom and, if so, it must prevail.

If the entire case be reargued, resubmitted and finally decided on its merits, without regard to precedents save in so far as the same are well grounded in sound reason and common sense, or else have become an established rule of

real property, then, whatever the outcome, the immediate object of this memorandum will have been attained.

### DISSENTING OPINION DELIVERED BY MR. JUSTICE WOLF, IN WHICH MR. JUSTICE DEL TORO CONCURS.

I dissent on the grounds of *Martorell* v. *Ochoa,* 23 P. R. R. 28. The majority opinion, as I understand it, approves of that decision, and it fixes the law for this island. A court without jurisdiction cannot give authority to convey minors' property. *Longpré* v. *Díaz,* 237 U. S. 512.

The lack of jurisdiction prevents the rise of even color of title, the equivalent for most purposes of the phrase *"justo título."* Nor does it seem to me that the situation can be saved by holding, as suggested, that previous to 1905 and the decision in *Esterás* v. *Arroyo,* 16 P. R. R. 689, there was a general understanding that any district court might give authority. The law was plainly otherwise as pointed out in *Martorell* v. *Ochoa,* 23 P. R. R. 28, *supra.* There was no jurisdiction and no rule of property founded on any decision of a competent court. From 1889, when the Spanish Civil Code went into effect, until 1902, there was no opportunity for *stare decisis.* I do not question the good faith of appellees. A *"justo título"* and good faith were both essential. The failure of those who had to do with the alleged title to know the state of the law cannot affect the rights of the minors.